Meier Steinbrink,
Official Referee. This is an action for a declaratory judgment wherein the owner of a garage and parking lot challenges the constitutionality of Local Law No. 61 of 1947 (Administrative Code of City of New York, § B 32-250.0 et seq.) and rules promulgated thereunder for the licensing and regulation of garages and parking lots within the city of New York.
Enactment of the legislation in question was preceded by a public hearing which, according to the report of the New York *488 City Council’s committee on general welfare, revealed countless instances of widespread rate-gouging and other abuses on the part of many garage and parking lot owners and their employees. Among the abuses complained of were the following: overcharging and frequent changes in rates, often without previous notice; sudden changes in prices, often between the time of parking and leaving; requiring the purchase of gas and oil at the garage as a condition to storing the vehicle; overnight street parking of patrons’ cars, although the agreement called for off-street storage, and accepting for storage or parking a far greater number of vehicles than the maximum capacity; damage to vehicles or loss of a tenant’s property and refusal on the part of the garage or parking lot to accept responsibility ; the unauthorized use of a tenant’s automobile and gas; and the use of harsh and abusive language by those in charge or their employees if the tenant complained about the increase in rates, damage or loss of his property or some other just grievance. ■ •• y
Predicated upon these disclosures, the committee reported that “ the serious shortage of garage and parking space and the conditions and abuses cited have reached emergency proportions in the City of New York, and that licensing and regulatory legislation is necessary for the protection of the public.” The local legislative body thereupon enacted the law with which we are here concerned and the commissioner of licenses of the City of New York adopted rules and regulations pursuant to authorization conferred therein.
The local law requires the operator of a garage and parking lot' to obtain a license and pay a fee therefor; to file with the commissioner of licenses a schedule of rates showing the prices charged for daily, weekly and monthly parking or storage of motor vehicles; and to post conspicuously at the public entrance a sign setting forth the schedule of rates charged and certain other information. It prohibits the licensee from making any charges in excess of the rates set forth in the schedule filed with the commissioner of licenses, except upon filing and posting of an amended schedule of rates which are to be effective-sixty days from such filing and posting. Some of the other provisions relate to the transfer, revocation, suspension and renewal of licenses; limitation of the number of vehicles to be stored and the manner of storage; and violations of the local law or the rules and regulations are made criminal offenses punishable by fine or imprisonment, or both.
Prior to the institution of this action a summons issued out pf the Magistrate’s Court of the City of ISfew York charging *489 the plaintiff with violating section B 32-254.0 of the Administrative Code of the City of New York in that he failed to conspicuously display a price sign as required by that section. Subsequent to the joinder of issue herein, the plaintiff was convicted on that charge in the Magistrates’ Court and received a suspended sentence. It appears that the City Magistrate declined to pass upon the constitutionality of the statute for the reason that the violation with which the plaintiff was charged was too narrow and limited in scope to warrant such consideration.
Plaintiff asserts in this action that Local Law No. 61 of 1947 and the regulations adopted by the commissioner of licenses in pursuance thereof “ are void, unconstitutional and ineffective in whole or in part insofar as they affect plaintiff, attempt to control his prices, attempt to tax without enabling legislation, impair his freedom to * * * use his property and take his property without compensation or due process of law. ’ ’ Defendants take the position that the challenged legislation and regulation are in all respects reasonable, lawful and proper. At the same time, however, they ask that declaratory judgment be withheld inasmuch as the issues in the case at bar could have been and were in fact raised in the criminal prosecution, and that plaintiff’s remedy is by appeal from the judgment of conviction.
As to the preliminary objection concerning the availability of declaratory judgment, I think it suffices to state that the broad question here presented with regard to the constitutionality of the entire statute was not before the City Magistrate. Declaratory judgment would be inappropriate only if all the issues could be determined in an already pending action (Woollard v. Schaffer Stores Co., 272 N. Y. 304, 311), but that is not the case here. Furthermore, the possible existence of other methods to test the validity of the local law here involved does not per se preclude the plaintiff from resorting to an action for declaratory judgment (see Woollard v. Schaffer Stores Co., supra, and Commission of Public Charities of City of Hudson v. Wortman, 255 App. Div. 241, 243).
The Constitution of the State of New York (art. IX, § 12), the City Home Buie Law (§ 11, subd. 2) and the New York City Charter (§ 27) have conferred upon the City Council broad legislative power to provide by local law for the preservation and promotion of health, safety and the general welfare of its inhabitants. “ If such laws have substantial relation to matters over which legislative power is vested in the local *490 legislative body of the city and are not inconsistent with laws of the State, they are valid (People v. Lewis, 295 N. Y. 42, 49.) “ They must be reasonably calculated to achieve a legitimate public purpose.” (Good Humor Corp. v. City of New York, 290 N. Y. 312, 317.)
As stated in People ex rel. Armstrong v. Warden of City Prison of City of N. Y. (183 N. Y. 223, 226): “A statute to promote the public health, the public safety or to secure public order or for the prevention or suppression of fraud is a valid law, although it may, in some respects, interfere with individual freedom. All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good. It may be laid down as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality.”
It is generally accepted that the Legislature of the State or the legislative body of populous cities have the right, if not the duty, to license or regulate the activities of theatres, moving picture houses and a myriad number of places of amusement. The parking of cars in the city of New York has become an almost insurmountable problem. One-way streets, one-side-of-the-street parking, restricted areas and parking meters are all something with which everyone is familiar. To relieve the street congestion, the city has for a long time licensed and regulated parking lots. That at all times there may be inconvenience to the lessees and possibly owners of these parking lots furnishes no reason for the overthrow of the act itself. At times all must make slight sacrifices or bear some slight infringement of what might be deemed a private right when it is quite apparent that such regulation is for the public good.
In Noble State Bank v. Haskell (219 U. S. 104, 110-111), Justice Holmes, writing for a unanimous court, said: “ In the first place it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. Clark v. Nash, 198 U. S. 361. Strickley v. Highland Boy Mining Co., 200 U. S. 527, 531. Offield v. New York, New Haven & Hartford R. R. Co., 203 U. S. 372. Bacon v. Walker, 204 U. S. 311, 315. And in the next, it would seem that there may be other cases beside the every day one of taxation, in which the share of each party in the benefit of a scheme of mutual protection is sufficient compensation for the correlative burden that it is compelled to assume. See Ohio Oil *491 Co. v. Indiana, 177 U. S. 190. At least, if we have a case within the reasonable exercise of the police power as above explained, no more need be said. It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U. S. 518. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.”
There is a twilight zone separating public use from private use, and within this zone the line of division is irregular, and here it is that the courts differ from each other in the application of the principle but the difficulty has been in determining whether the use was public or private. '
In my opinion the regulation of garages and parking lots is properly within the sphere of legislative power of the City of New York as defined by the Constitution, the City Home Rule Law and the New York City Charter. (In this connection, see Stearns v. City of Chicago, 368 Ill. 112; State v. United Parking Stations, 235 Minn. 147; People v. Litvin, 312 Mich. 57, and 24 Am. Jur., Garages, Parking Stations and Liveries, § 10, p. 484 et seq.; also, see Matter of Schachne v. McCaffrey, 1 Misc 2d 748.) The findings of the City Council’s committee on general welfare as to the abuses which were prevalent prior to the enactment of Local Law No. 61 of 1947 make it abundantly clear that the regulation of garages and parking lots has a substantial relation to the general welfare of the inhabitants of the City of New York. The specific provisions under attack do not offend the Federal or State Constitutions and constitute a valid exercise of the police power.
I therefore conclude that Local Law No. 61 of 1947 and the rules and regulations here challenged are constitutional and valid. The complaint is, accordingly, dismissed, with costs.